AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Apple iPhone<br>Model: Unknown<br>Seized as FP& F: 2024255400013801 Item: 0003 | )<br>)<br>)  Case No.  24MJ8420<br>)<br>)<br>) |

**FILED**
May 15 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ VeronicaCota  DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 05/15/2024

*Judge's signature*

City and state:  El Centro, California       HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**         Blue Apple iPhone
            Model: Unknown
            Seized as FP& F: 2024255400013801 Item: 0003
            Seized from Glendy Guadalupe NORIEGA-Martinez
            **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of April 8, 2024, up to and including May 8, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**    Black Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400013801 Item: 0002
Seized from Luis Angel CHAIREZ
**(Target Device #1)**

**A-2:**    Blue Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400013801 Item: 0003
Seized from Glendy Guadalupe NORIEGA-Martinez
**(Target Device #2)**

as further described in Attachments A-1 to A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Luis Angel CHAIREZ (CHAIREZ) for transportation of illegal alien Glendy Guadalupe NORIEGA-Martinez (NORIEGA) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from CHAIREZ and the Material Witness on or about May 7, 2024, incident to the arrest of CHAIREZ and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation.

1

The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as

3

images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On May 7, 2024, the Calexico Station's ASU was conducting surveillance in the East Desert of the Calexico Border Patrol Station's Area of Responsibility approximately 32 miles east of Calexico Port of Entry. This area of the border region consists mainly of spotted brush and open desert. In this area, there is a fence on the International Boundary that is approximately 20 feet tall. Interstate 8 is approximately one-half mile north of the International Boundary and runs parallel to it as well.

11. At approximately 5:55 pm, Border Patrol Agent (BPA) H. Inzunza, who was performing line watch duties in Zone 20 of Calexico Station's Area of Responsibility,

4

observed a suspected illegal alien, running north from the border fence towards Interstate 8 south of the Imperial Irrigation District's Drop 1. BPA Inzunza relayed this information to BPA L. Schwantner, who was working in the Remote Video Surveillance Room. BPA Schwantner obtained visual and continued observing the illegal alien as she continued towards Interstate 8. Once the illegal alien reached Interstate 8, she crossed the Interstate and concealed herself in some brush north of Interstate 8. BPA O. Ismail, who was driving an unmarked Border Patrol Service vehicle, positioned himself in the median at the Twin Bridges and maintained visual of the area the illegal alien was concealing herself. BPA T. Donahue, who was driving an unmarked Border Patrol Service vehicle, positioned himself at the onramp to Interstate 8 westbound lanes at Gordon's Well. An Air and Marine Operations (AMO) aircrewmen, BPA J. Rehrer, was flying in the area and maintained visual of the area.

12. At approximately 7:33 p.m., BPA Schwantner advised via service radio that a silver-colored sedan, later determined to be a Hyundai Sonata, was stopping near the illegal alien and that the illegal alien was boarding the sedan. The Hyundai then merged back on to the Interstate and continued driving west. BPA Ismail located the Hyundai as it drove west past his location. BPA Donahue pulled in behind the Hyundai and ran record checks through El Centro Sector's Communications Center. BPA Donahue and BPA Ismail followed the Hyundai for approximately four miles until it reached Brock Research Center Road. The Hyundai then took the off ramp and drove south on the Brock Research Center overpass. BPA Donahue followed the Hyundai over the overpass. Just prior to merging onto the eastbound on ramp, the illegal alien bailed out from the Hyundai. BPA Ismail apprehended the illegal alien, later determined to be Glendy Guadalupe NORIEGA-Martinez (NORIEGA). NORIEGA was determined to be a citizen of Mexico illegally present in the United States. The Hyundai then merged back onto Interstate 8 east at a high rate of speed.

13. At approximately 7:38 p.m., BPA Donahue activated his emergency lights and sirens as he merged back onto Interstate 8 to signal for the Hyundai to stop. The

Hyundai continued driving east at a high rate of speed, swerving in and out of traffic. BPA Schwantner advised via service radio that agents were set up to deploy their service issued vehicle immobilization devices (VID) at the Twin Bridges on Interstate 8. BPA Donahue continued relaying speeds, location, and direction of travel as they drove east on Interstate 8 towards the Twin Bridges.

14. At approximately 7:40 p.m., BPA P. Durazo and BPA W. Carlton deployed their VIDs in front of the Hyundai, but the vehicle drove around the deployed VIDs and avoided making contact. A white sedan, later determined to be a Kia Optima, unintentionally drove over the deployed VIDs at Twin Bridges. The pursuit continued east on Interstate 8 at a high rate of speed. The pursuing agents were unable to maintain visual of the Hyundai due to the high rate of speed. BPA Rehrer was able to maintain visual of the Hyundai from the air as it continued traveling eastbound on Interstate 8 towards Winterhaven, California.

15. BPA Rehrer continued relaying speeds, location, and direction of travel as they drove east on Interstate 8 towards the A7 Bridge. BPA Inzunza who was positioned further east of the pursuit announced via radio he was set up to deploy VID at the A7 bridge on Interstate 8. At approximately 7:44 p.m., BPA Inzunza deployed his VID at the A-7 Bridge but the Hyundai drove around the deployed VID and avoided contact with the VID.

16. The primary pursuing agent and supporting pursuing agents deactivated their emergency lights and sirens approximately four miles west from Winterhaven, California. BPA Ismail and BPA Donahue continued driving east on Interstate 8 with the flow of traffic following directions being relayed by BPA Rehrer.

17. BPA Rehrer announced via radio that the Hyundai took the Winterhaven Dr. exit and drove south towards the River's Edge RV Resort. Once the Hyundai reached a dead end at Winterhaven Dr. and Swallow Way, BPA Rehrer relayed that CHAIREZ abandoned the Hyundai and ran south through the RV resort and attempted to conceal himself in the reeds of the Colorado Riverbank. BPA Rehrer continued calling out the locations of the vehicle and driver to agents who arrived on scene. At approximately 8:03

p.m., BPA Donahue located CHAIREZ in the reeds and placed CHAIREZ under arrest for 8 USC 1324 alien smuggling. CHAIREZ was determined to be a United States citizen.

18. All individuals were transported to the Calexico Border Patrol Station where their biographical data was recorded. On May 7, 2024, at the Calexico station, a video sworn statement of CHAIREZ, was conducted by BPA Ismail and BPA Ramirez. BPA Ismail advised CHAIREZ of his Miranda rights in the English language at approximately 10:10 p.m. CHAIREZ stated that he understood his rights and was willing to answer questions without the presence of an attorney. CHAIREZ stated he resides in San Luis, Arizona. CHAIREZ admitted today he agreed to pick up and transport an illegal alien for monetary gain. CHAIREZ stated he was promised payment of approximately $300 USD for picking up and transporting the illegal alien to an unspecified location at the time of pickup. CHAIREZ admitted he knows it is a crime to pick up and transport illegal aliens in the U.S., but claimed monetary necessity motivated him to commit today's illegal action of picking up and transporting illegal aliens. CHAIREZ stated that he was contacted in today's alien smuggling event by an unknown alien smuggler via WhatsApp. CHAIREZ stated he received the pickup location of the illegal alien via text.

19. On May 7, 2024, at the Calexico station, a video sworn statement of material witness Glendy Guadalupe NORIEGA-Martinez was conducted by BPA Ismail at approximately 10:27 p.m. NORIEGA stated she is from Chiapas, Mexico. NORIEGA stated she her destination was Chicago, Illinois. NORIEGA stated she was going to pay $9,000 USD to be smuggled into the United States.

20. During a search incident to arrest of MENDOZA and the Material Witness, two cellphones were found: a gray Apple iPhone (Target Device #1) was found inside the vehicle on the driver seat by SBPA Zielinski and MENDOZA claimed ownership of this phone. A green Samsung Cellphone (Target Device #2) was found in the rear seat of the vehicle and NORIEGA claimed ownership of this phone. All cellphones were seized as evidence.

21. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on April 8, 2024, up to and including May 8, 2024, the day after the arrest of CHAIREZ and the Material Witness.

## METHODOLOGY

22. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and

record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

25. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CHAIREZ and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by CHAIREZ, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 15th day of May, 2024.

_____  12:04 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**         Black Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400013801 Item: 0002
Seized from Luis Angel CHAIREZ
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-2:**</u>         Blue Apple iPhone
            Model: Unknown
            Seized as FP& F: 2024255400013801 Item: 0003
            Seized from Glendy Guadalupe NORIEGA-Martinez
            **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of April 8, 2024, up to and including May 8, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.